Next case for argument, 19-3196, North Dakota, Lucas Scott v. Key Energy Services, et al. Okay. Mr. Williams, go ahead. I'm Justin Williams. I'm on behalf of Appellate Lucas Scott. May it please the Court, Counsel. I'm in the unenvious position to start my argument by criticizing the District Court. And I think the reason is simple because they erred in their decision. Being a judge is like being a lawyer these days, not exactly an easy job and one that's come with a lot of different twists and turns that some of us of my age are not used to like this technology. But if I can direct attention to the District Court order on page 10, there are two instances that I believe compelled this Court to, in its review of this case de novo, to overrule the District Court and send this case to trial. The first thing is the District Court heavily relies on the case of Berry v. Baker Electric Co-op, Inc., North Dakota Supreme Court case from the 1980s. In fact, at the bottom of page 10 of the order, after citing Berry, it says, We do not believe that the State of North Dakota, under the threat of criminal sanction, intended to exact a premium for coverage and at the same time deny the immunity to the complying employer. To exact such premium but not provide the concomitant immunity to the employer would constitute fraud. They take that essentially from the appellant's brief verbatim, and the appellant did not point out to the court that the statute, North Dakota Century Code 65-01-05, of which Berry v. Baker Electric was based, was repealed in 2001. So that, it is our opinion, and I think the court would find that that Berry case is not good law, that threat was no longer present. At the top of page 10 of the court order, the court, and I'll quote, it starts at the very top of the page, The court does not believe the North Dakota Supreme Court would apply the dual capacity doctrine given the facts of this case. The court finds key energy was not acting in a dual capacity as employer and manufacturer because HydroWalk manufactured, designed, and sold or leased the HydroWalk system that injured Scott, not key energy. Thus key energy did not occupy a second capacity that confers on it obligations independent of those imposed on it as employer. And then they sought, they say, see Latin Dressy, the 290 Northwest 2nd at 270, the North Dakota Supreme Court case that we believe provides this appellate court with a roadmap to its decision. Instead of the interpretation... Okay, well, please, please address that case because I do think that is the most relevant case by far, and I thought it was bad for you. You say it's good for you. Tell me how it's good for you. I'd say it's good for me because in the Latin dress case, the equipment was manufactured by the employer, and that is not the basis of our liability in this case. And the North Dakota case Supreme Court relying heavily. In fact, they quote Arthur Larson, Professor Larson, who is generally considered the guru on workers top law. And at the bottom of the... I don't have on story the exact page it is in my copy of Latin dress, but if you're talking about Larson, it says significantly Larson after such discussion, and it talks about Larson's. First is criticism of the unsound application of the California case of Douglas, and then Larson defines the roadmap that the North Dakota Supreme Court, in our opinion, adopted. It says dual capacity requires a distinct separate legal persona, not just a separate theory of liability of the same legal persona. Essentially, the district court's opinion was that we needed to show that key energy manufactured or was the manufacturer of the product. That is not what Latin dress says. It says we need to show, as is the case, and we have shown that key energy is being sued as a dual persona. In 2008, key energy merged with the manufacturer, designer, and the person who put this product in the stream of commerce. They sold HydraWalks. Key energy merged with HydraWalk, and there is no question that the exception to the successor corporation having the... Assuming the liabilities of the first, one of the exceptions is when you have a merger or consolidation. In this case, key energy has not... It's in fact admitted at four different places there was a merger. First of all, I would point out that had there not been a merger, Scott, who was never employed by HydraWalk, would have had the ability to sue HydraWalk, which is one of the statuses that all of the cases that accept the dual persona or dual capacity doctrine, what they rely on. If we agree that North Dakota would adopt this more narrow dual persona doctrine in this situation where there's the merger of these two companies in this somewhat unusual circumstance, can you think of another example other than the type of situation we have here where the dual persona doctrine would even apply, or are we just talking about this very, very narrow factual scenario that obviously happens periodically but not commonplace? I think you hit the nail on the head. It's going to be a very narrow exception that's going to not come up very often. More likely what you're doing if you do not accept it is a bad policy because, as most of the courts that have accepted this doctrine have pointed out, what you end up with is the defective manufacturer of products being able to lose liability for putting a defective product, either through design or manufacture in the stream of commerce, and then having a loss of remedies because of a simple change in corporate form, which has been held to be not equitable, that equity pours the vacuum. It's also held to be a travesty of justice by some of the courts that have discussed it. And I think that if you look at North Dakota law, which the appellee I think wrongly assumes always allows for immunity in the situation of employer-employee context, which is not the case, I can point the court to the Davis Court dissent in Texas, which talks about a common type of employer liability despite the immunity of the workers' comp context. And it's very analogous to this, is when you have an indemnity contract, which are mostly in the oil field based on you agree to provide indemnity to someone else, and Key does this often as a service company, for suits brought by your employers, where you would normally not be able to escape the liability or circumvent the liability of the statute. You're allowed to do that, and it has been never disputed that you can contract away. Let me interrupt you. That's a matter of state law, though. You agree it'd be different in different states? Yes, just like this. Proceed. Yes, and it allows, indemnity contracts are allowed in North Dakota. In fact, the legislature was faced in 2012 with, it was brought to them to have some changes in those laws, and they refused to do so. In our case, likewise, the exception to the general proposition that the employer would not succeed in the liabilities of companies that it acquires allows for the assumption of liabilities during a merger, and that is a right of contract. Key Energy could have simply, and they decided not to, done an asset purchase. If they had done an asset purchase, we would not be here. There would not be a dual persona. There would not be successor liability. They wouldn't be sitting in someone else's shoes, that of the defective product designer and manufacturer. I think that it is clear, it is also, if you look at 65-01-09 of the North Dakota Century Code, it, like the immunity provision that the appellees like to rely on, it allows for a suit of third parties who are responsible for the injury. So that while the district court erred in its decision in two points, I think if you look at the doctrine, which we are here today to talk about, and factually what happened in 2008, HydroWalk was a manufacturer of these machines, which were pipe handling machines. Not much discovery is actually going on in this case because it was quickly a matter of law as to whether or not we would be barred, but the oil field pipe handling happens a lot on oil field locations where there are multiple companies. HydroWalk sold their products into the stream of commerce, and they would be used on an oil field location where if they fell over, like here when Scott was injured seriously by the machine, they are potentially injuring multiple employees of different companies. So the general public is potentially at harm from the design and defective product. Under the doctrine of dual capacity, or more precisely in our case, dual persona, the employer who is normally immune from suit for a work-related accident by an employee covered by workers' compensation may be held liable as a third-party tortfeasor when and if the employer occupies, in addition to his capacity as an employer, a second capacity, which would confer on him obligations independent of those imposed on him as an employer. Whereas here, an employer's liability arises solely by reason of an independent contractual assumption of the obligations and liabilities of a third-person tortfeasor, the employer puts on a second hat, or I would say steps into the shoes of the manufacturer. I would say the difference is that in the dual persona doctrine, you are sitting in somebody else's shoes. In the dual capacity doctrine, you put on a different hat as a manufacturer. I appreciate your time, and I'm going to reserve the rest of my argument as rebuttal. You may, Mr. Edison. Mr. Edison, you're muted, I'm pretty sure. You are correct, Judge. Sorry about that. I am Brent Edison, and I represent the defendants and appellees, Key Energy Services and HydroWalk, Inc., which merged into Key Energy Services in 2008 and ceased to exist as a separate entity. Now, Mr. Williams conceded that we really have a question of law here, whether Mr. Scott's claims are barred under the exclusive remedy immunity provided for under North Dakota law. And on that point, North Dakota law is very clear, and in fact, the statutory scheme for North Dakota workers' compensation is contained in Title 65 of the North Dakota Century Code, and it provides in not one but four different places for exclusive remedy of workers' compensation. But, counsel, it has a specific one for third-party tortfeasors, so come to the point. And the two, for our purposes, became one entity. This is not a third-party tortfeasor situation as properly followed by the district court. What about the quote in the North Dakota case, the one that starts with the L, the 1980 case, where they actually refer to Larson's discussion of this dual-capacity concept and carve out and sort of acknowledge that he's carving out a distinct legal persona that must be separate. Why wouldn't we look to that sort of acknowledgement of what Larson is saying about this sort of even more narrow focus on dual personas as an indication, at least, that North Dakota might consider this more narrow application of this particular doctrine in this situation? Well, Your Honor, I would agree with you that we need to look to the Latendress case, however it's pronounced. I've been saying Latendries, but we'll go with Latendress. But that's the case we need to look to. And that case did not apply the dual persona or dual-capacity doctrine under similar facts. The case discussed it. It did not apply it. And, in fact, the doctrine has never been applied in a case in North Dakota. Now, you mean in the holding of the case, right, counsel, not the rationale? I mean, in the holding of the case, they did not apply it. And I would submit that the rationale of the case would support the district court's action here as well. Well, why don't you parse Latendress, or however we say it, because I do think it's the most relevant. I understand the results for you, but what about the language on page 271? It was quoted by counsel, and I think it's the main point of his argument. Well, let me go to page 271, Judge, if I might. Please do. Thank you. Okay. The. The. The quote from Larson. Talks about the potential that an employer, in addition to being the employer, would have a second capacity that confers on him obligations independent of those imposed on him as an employer. And on that point, the trial court, and in that case, it's just a refresher on that case, that case, the employer manufactured a pin, and the employee was injured while installing that pin. And so it was argued that the employer should be treated as having a dual capacity, that of employer and manufacturer, and that there should be an exception exclusive remedy rule, which was rejected ultimately in the holding on that case. And after discussing that, the Lattendris court discussed that and focused on the requirement that the employer occupies a second capacity that confers upon him obligation independent of those imposed on him as an employer. And in that case, as in the case before the court, the obligations imposed on the employer were not different, separate, independent of the status of the employee as an employer. In other words, in a different capacity, they would, the employer owed obligations to provide, you know, safe product and safe work environment to the employee. And as an employer, the employer had obligations similar. So there was no independent obligations imposed in that case. And Judge Hovland followed the same thing at page 10 of his order, appendix page 100. And basically after discussing these issues, said key energy did not occupy a second capacity that confers on it obligations independent of those imposed on it as an employer and quote from Judge Hovland. In this case, Mr. Scott was injured in the yard of key energy services in Dickinson, North Dakota. And there under those facts, as was the case in the Lattendris case, there were no independent obligations in play there. Whatever obligations were the same for key energy as employer, manufacturer, whatever capacity. Can I ask you a question about the Supreme, the North Dakota's cases, at least acknowledgment, as you can see, they do quote Larson and and who then acknowledges this sort of distinct separate legal persona. So so assume for the purposes of this question that North Dakota would acknowledge that narrow version of a dual capacity. What would that apply to? Do you think if not this situation with a merger? Well, in it could potentially apply in a situation where the employee is is injured by a product, but not in the in the work setting as there is here, that would be a different situation. There may be different obligations under a situation like that, which are not present here. But then we wouldn't even have to get into that situation, right? Because this this sort of discussion, because the person would not be in the course of their employment. So the workers comp issue would not would not be a live one. If I'm understanding your example, can you think of another one? Well, I am, frankly, struggling a little bit to come up with, and I would note on that that one of the thing one of the quotations from Larson in our in our brief. As Larson states at Volume 10, Chapter 113, it is now held with virtual unanimity that employers also the manufacturer installer of tribute or distributor of a product used in the work cannot be held liable and damages to its own employee on a theory of products liability. So I think Larson is recognizing that the limitations on finding the possible dual persona that's been urged in this case, and I'm struggling to prove a negative because this is a situation before the court where the obligations are not independent and the duties owed were inextricably linked to the employment. The equipment was used for the work. So, under these circumstances, I don't see how it would be adopted. Now, having said that, despite the language and Latin dress under North Dakota's statutory scheme and case law. I struggle to find an example where the North Dakota court would adopt the dual capacity situation. And on that, as I mentioned, there's four different places, make it clear that there is no common law right of action preserved, be it in products liability, strict liability negligence. Section 650101 has the grand bargain workers compensation. Basically, a injured worker gets certain relief, regardless of fault and to the exclusion of all other remedies. And to that end, all civil actions and civil claims for relief for those injuries are abolished, except if provided in title 65. 650108 says if an employer secured the payment of compensation by contributing premiums to the fund, the employee does not have a claim for release against the contributing employer for damages for personal injury, but must look solely to the fund. It goes on and on. 650428 says employers who comply with the provisions of this chapter shall not be liable to respond to damages of common law or by statute for injuries to the employee. Counsel, to what extent do you think that North Dakota Supreme Court in Latin dress adopts dual capacity at all? I don't think it adopts it. It discusses it as a possible theory, but doesn't apply it. And it discusses it in the context it was being urged based on a Douglas case in California. And, you know, California notably basically reversed that case by legislative action. I'm aware of that. But they do take about, I don't know, a fourth of the opinion or a fifth of the opinion. Just as San takes talking about that. And then it says after careful consideration of it. But then they say failed to establish the holding is failed to that it came within the dual. But that sounds like they're recognizing it when you say failed to establish he came within it. Well, they they. They did. They did. They did not ultimately apply it in the holding your honor. The holding they act like it's there. This case is not within it. See what I'm trying to say. I hear what you're saying. And well, let's for purposes of this case. Whether Latin dress recognized it or not. For multiple reasons, the district court properly rejected it here. The landers case cited Larson with in support of its decision. North Coast Supreme Court did. And Larson makes it clear that the the obligations, if it's in the extractively linked with the employment, the alleged obligations, then it's not a appropriate for application of the dual capacity. Was the product here sold to the public at large? That's a great question, your honor. And there's no evidence in this record of that. What's the district court say about that? We are reviewing the district court district court say it was sold to the public or not. Or do you know the district court? The district court. At page 9. Appendix page 99. Quotes Larson. For the proposition that the some of the other cases from other jurisdictions that made a distinction between being sold to the public or not, that that was a mistake, according to Larson. And the court then went on to. Just further discuss that there must be independent obligations as we've been talking about. So in the in the district court's opinion. They that was not. Dispositive. Do you think it's dispositive? Well, he did. Let me let me let me add one more thing. Sure. At page 10 appendix 100. 2nd full paragraph. Judge Holland pointed out that he that is Mr. Scott did not sustain an injury as a result of his use and operation of the Hydra walk system as a member of the general public. So the the district court address that in multiple ways. And I would just point out also that in the Latin case, the court at page 272 pointed out that neither the pleading of the plaintiff nor the record supported that this was held out and sold to the general public, which I think, which is the same situation here. Thank you. We'd ask that the district court be affirmed. Thank you for your argument. Mr. Williams. We're about. Am I unmuted now? Thank you, sir. As a young lawyer, I learned long ago that when the court is making your points for you, you just sit down and be quiet. But what I'm going to do is you judge Justice Benson, you actually stole some of my thunder, because I think that the court in the Latin case clearly leaves open the the. They could have simply said that workers cop statute does not allow for a dual capacity or a dual persona. But after after adopting the quote of Larson about dual persona, they then stayed at the end. As you rightly pointed out, the case didn't fall within. And I think we agree with that because the pen that was manufactured and was not sold to the general public, but only used in the process for the employer's work. The evidence in this case is Hydra walks, sold Hydra walks. They were manufactured and sold to the general public prior to the time that they merged with Key Energy. Key Energy, the limited discovery we have rented not only the Hydra walks to the general public for use in the oil field work, but they also sometimes rented operators with them to go out on location. Not only were the the general public subjected through rental and sales to the use of the Hydra walk, but they were also potentially injured by multiple people being employed by multiple employers. Well, you have a question, counsel. I do, counsel. That being said, what do you do with the with the quote from Larson's that the North Dakota Supreme Court sets forth on page 271 in the Latin dress case where it talks about the fact that the Douglas case overlooked the simple fact that the use of the product was a routine. An integral part of the employment. And from what you've just told us. Certainly appears that that this Hydra walk was used as a routine and integral part of the employment of the of the appellant. So what where am I going wrong there? Because it's it. I think that what Larson Professor Larson is actually pointing out is that any particular piece of equipment that is used in employment is going to find the same. So I think that counsel is wrong in his interpretation that the different hat versus different shoes applies. Different shoes is a contractual right. Different hats is a manufacturing employer. So your time is out. Let me see if you've answered Judge Shepard's question. Judge Jeopardy answer your question. I heard the answer. OK, good. Ask an answer. So listen, thank you both for your arguments in this case. And that makes case number 19 dash 3196 submitted for decision by this court. Miss Smith.